Filed 12/3/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, | No. B249201 |
| Petitioner, | (WCAB Case No. ADJ7224961) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD, ADRIENNE JOHNSON, | |
| Respondents. | |

       Petition for Writ of Review:  Petition granted; order amended, and remanded to the Workers' Compensation Appeals Board.

       Law Offices of Dean M. Stringfellow, Dean M. Stringfellow for Petitioner.

       No appearance for Respondent Workers' Compensation Appeals Board.

       Law Offices of Mark A. Slipock, Mark A. Slipock for Respondent Adrienne Johnson.

## INTRODUCTION

The applicant for workers' compensation was a professional basketball player who was not employed by a California team, has never resided in California, has played one professional game in California out of 34 games played during the 2003 season, and has suffered no specific injury in California. She seeks a workers' compensation award in California against her former non-California team and its insurer for a disability based on a cumulative injury. We hold that California does not have a sufficient interest in this matter to apply its workers' compensation law and to retain jurisdiction over the case. We also hold that we have jurisdiction to review the order in this case even though the decision of the Workers' Compensation Appeals Board (Board) was not a final decision or order.

## BACKGROUND

Adrienne Johnson (Johnson), the applicant and real party in interest, attended Ohio State University, graduating in 1997. Upon graduation, she was drafted by the Cleveland Rockers, a professional basketball team in the Women's National Basketball Association (WNBA), and played for them for two years. Johnson next played for the Orlando Miracle, which became the Connecticut Sun in 2003. In December 2003, an MRI revealed she had a knee injury, for which she had surgery in 2004. Although Johnson did not play during the 2004 season she signed with the Seattle Storm and practiced with that team in Seattle in 2005. She did not play for that team during the 2005 regular season and has not played in any professional games since the end of the 2003 season.

While playing for the Orlando Miracle, Johnson lived in Orlando, Florida. When her team moved to Connecticut, Johnson moved from Orlando to Hackensack, New Jersey, and she continued to play for that team. At the time of her September 2010 deposition in the workers' compensation proceeding in California, Johnson resided in Louisville, Kentucky and had been living there for two years.

2

Johnson sustained an injury to her right knee while playing for the Orlando Miracle in 1999. She had surgery for this injury in Orlando, Florida in 2000. In May 2001, while in training camp in Orlando, Johnson tore her Achilles tendon. She was treated again in Orlando and missed the entire 2001 season. She reinjured her right knee in 2003. Johnson signed a two-year contract with the Connecticut Sun on May 2, 2003. She signed this contract in Hackensack, New Jersey. Her agent was based in Ohio.

Johnson filed a workers' compensation claim in Connecticut in August 2003 for the injury to her right knee. It was resolved by a settlement resulting in a $30,000 payment to Johnson. Johnson played 34 games in the 2003 season, which was the full season. During that season, she played one game in Los Angeles, California on July 20, 2003.

After leaving professional basketball, Johnson worked briefly for a printing company and then as a substitute teacher in Kentucky for a year. She then went to work for the University of Louisville in 2006, where she was still working at the time of her deposition in this workers' compensation proceeding. Johnson complains of discomfort in her knee, hip, and shoulder. An agreed medical examiner opined in 2010 that Johnson had chronic conditions in her shoulder, spine, hip, and ankle. Another agreed medical examiner noted that her irritable bowel syndrome symptoms were related to her orthopedic problems.

Johnson's only contact with California was the one game she played in Los Angeles on July 20, 2003.[1] She nevertheless made a claim against her employer, the Connecticut Sun, for workers' compensation and filed an application for adjudication of the claim filed with the California Division of Workers' Compensation/Workers' Compensation Appeals Board for her multiple basketball injuries. The employer's workers' compensation insurer was Federal Insurance Company, which is part of the

_____

[1] There was a suggestion at oral argument that in the past Johnson played other games in California with another team. The record does not reflect these games. Johnson contends that the one game is sufficient for the court to hold that the Workers' Compensation Board should award benefits to her.

Chubb Group of insurance companies for workers' compensation. The Workers' Compensation Judge (WCJ) awarded disability indemnity, and in a petition for reconsideration, the Board rescinded the award and returned the matter to the WCJ for further proceedings to apportion the compensation between the present injury and past injuries for which she already received workers' compensation benefits in Connecticut. Johnson's employer, the Connecticut Sun and its insurer, Federal Insurance Company, petitioned for a writ of review, contending that the Board does not have jurisdiction over Johnson's claim. We granted the petition for review.

**DISCUSSION**

### A. Matter Reviewable

A petition for a writ of review generally may be sought only from a final order, decision, or award of the Board. (Lab. Code, §§ 5900, 5901[2]; *Maranian v. Workers' Comp. Appeals Bd.* (2000) 81 Cal.App.4th 1068, 1074; 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 2013) § 34.10[2], p. 34-9 (Hanna).) Certain threshold issues, however, are reviewable by way of a writ of review before there is a final order in the case. Examples of such issues include whether the injuries arose out of and in the course of employment, the territorial jurisdiction of the Board, the existence of an employment relationship, and the applicability of the statute of limitations. (See *Safeway Stores, Inc. v. Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 531-535, fn. 2.) These threshold issues potentially are dispositive of the case. Review of such issues may resolve the case without the time, effort, and expense of fully litigating a case. As the court stated in *Safeway Stores, Inc. v. Workers' Comp. Appeals Bd., supra,* at pages 533-534, "[W]here the employer or carrier asserts in good faith and with reasonable cause that it has no statutory liability at all, and the Board has

---

[2]     Unless otherwise noted, all statutory references are to the Labor Code.

4

decided that issue on review after a bifurcated hearing, prompt judicial review, whatever the court decides, may avoid the necessity of further litigation.  The fact that an order is reviewable does not mean that the appellate court must grant the petition for review; and if an employer files a petition without reasonable basis he will be liable for attorney fees for services of the applicant's attorney in connection therewith.  (Lab. Code, § 5801.)  Thus, protection exists against abuse of the appellate process in such cases."  Review of a threshold, dispositive issue generally is accepted.  (See 2 Hanna, *supra*, at § 34.10[2], pp. 34-10 to 34-11.)  This is an appropriate case for issuing a writ of review.

### B.    Denial of Relief

The issue in this case is which state's workers' compensation law applies, not which state has personal jurisdiction.  (9 Larson's Workers' Compensation Law (rev. ed. 2013) § 140.02[1], p. 140-3 (Larson).)[3]  The issue may be characterized as a "conflicts issue," which arises when there are contacts in multiple states.  (*Id.* at § 140.01, p. 140-2.)  But here, we must decide if California law may be invoked at all.  Thus, "the question of jurisdiction ordinarily precedes the conflict of laws question, for only after the [workers' compensation] commissioner determines that he has authority to entertain the action does he proceed to the 'choice' of whether to award benefits under our Workers' Compensation Act or, rather, to defer to the earlier grant of benefits under the laws of another state" (*Cleveland v. U.S. Printing Ink, Inc.* (Conn. 1991) 588 A.2d 194, 198; see *Jaiguay v. Vasquez* (Conn. 2008) 948 A.2d 955, 970 [as contrasted with torts, the "issue is whether this state has a sufficient interest in having an injured employee receive an award of [workers compensation] benefits under the laws of this state"]) or to the workers' compensation law of another state.  Thus, the WCJ's determination that "[p]laying in even one professional basketball game in California is sufficient to establish

---

[3]    The two concepts can coincide.  (9 Larson, *supra,* § 140.02[1], p. 140-3; see *Tucci v. Club Mediterranee* (2001) 89 Cal.App.4th 180 [applying conflict of law principles, held Dominican Republic law applied, which, unlike California law, allowed no tort action against an employer by an employee not insured by an authorized workers' compensation insurance company].)

jurisdiction" mischaracterizes the issue, which is not one of personal jurisdiction but rather one of whether one or more state compensation laws apply and whether in this case California may provide a forum for the claim.

### 1.    General Principles

As we discuss, whether California's workers' compensation law governs depends on the application of the due process clause of the United States Constitution.[4]  If an employer or the insurer are subject to workers' compensation law of a state that does not have a sufficient connection to the matter they are deprived of due process.  Also, the determination may depend on the application of the full faith and credit clause of the United States Constitution.[5]  That is, if the workers' compensation law of another state exclusively should apply and California does not have a sufficient contact with the matter, California must, under the full faith and credit clause, accede to the other state to provide a forum.  (See note, *State of Injury May Apply Own Law in Workmen's Compensation Cases* (1955) 55 Colum. L.Rev. 1070. 1071 ["the Court, at least in the areas of workmen's compensation, has impliedly accepted the position that the full faith and credit requirements do not go much further, if at all, than those of due process"].)

In *Bradford Electric Light Co. v. Clapper* (1932) 286 U.S. 145 (*Clapper*), a worker resided in Vermont, and was employed by a Vermont company.  Vermont provided that its workers' compensation law was an exclusive remedy and applied if the injury occurred outside of Vermont.  The worker who was sent to New Hampshire to repair a facility maintained by the employer was killed while carrying out that task.  New Hampshire law gave an employee a choice between a workers' compensation proceeding and a civil proceeding.  The worker's administratrix filed a civil action in New Hampshire and obtained a recovery.  The United States Supreme Court held that under

---

[4]     U.S. Const., 14th Amend.

[5]     "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."  (U.S. Const., art. IV, § 1.)

6

the full faith and credit clause, the worker—actually his successor because he was killed—could not maintain a civil action in the state of injury. The Court noted that the worker's residence, place where the employment contract was entered, and place of the employment relationship were all in Vermont, as was the employer's principle place of business. The worker was in New Hampshire only temporarily for a task. Invoking the full faith and credit clause, the Court, based on the relative contacts, required New Hampshire to apply Vermont law. Under *Clapper*, it appeared that the place of the injury as a single factor was insufficient to permit coverage by a state when the employee's presence in the state was temporary. *Alaska Packers Assn. v. Industrial Acc. Com.* (1935) 294 U.S. 532, 542-543 (*Alaska Packers*) and *Pacific Employers Ins. Co. v. Industrial Acc. Com. of California* (1939) 306 U.S. 493, 503 (*Pacific Employers*), however, "mark[ed] a break with the *Clapper* philosophy." (*Crider v. Zurich Ins. Co.* (1965) 380 U.S. 39, 40; see *Franchise Tax Bd. Of California v. Hyatt* (2003) 538 U.S. 488, 489 ["balancing-of-interests approach quickly proved unsatisfactory"].)

In *Alaska Packers, supra,* 294 U.S. 532, the Court held that the workers' compensation law of the state of employment, rather than the law of the state where the injury occurred, could be applied, but focused on whether the state had a legitimate interest in the injury and its consequences, rather than the "rigid conceptualism" applied in the past. (9 Larson, *supra,* § 142.03[1], p. 142-3, fn. 1.) In *Pacific Employers, supra,* 306 U.S. 493, the Court held that the place of injury can be the factor that justifies the invocation of the law of the state where the injury occurs. In *Carroll v. Lanza* (1955) 349 U.S. 408, 412-413, the Court held that the state of the place of injury need not apply the law of the place of employment, even if the latter state prohibited proceedings in the state where the injury occurred. The Court in *Cardillo v. Liberty Mutual Insurance* (1947) 330 U.S. 469 also confirmed that the existence of a "legitimate interest in the injury and its consequences . . . [is] the controlling constitutional test." (9 Larson, *supra,* § 142.03[3], p. 142-6.) The Court in *Cardillo v. Liberty Mutual Insurance, supra,* 330 U.S. at page 476 said that the determination "depends upon some substantial connection between the District [of Columbia] and the particular employee-employer relationship . . . [and] as so

7

applied, the statute [of the District of Columbia] fully satisfies any constitutional questions of due process or full faith and credit."

As stated by an authority, the cases make clear "that the test is not whether the interest of the forum state is relatively greater, but only whether it is legitimate and substantial in itself." (9 Larson, *supra,* § 142.03[5], p. 142-9, fn. omitted.) Thus, the forum state does not weigh interests as is done in a traditional choice-of-law consideration. Rather, it determines whether to grant relief under its own workers' compensation law or to deny relief altogether. The forum state can grant relief if it has some substantial interest in the matter. (*Id.* at § 142.03[5], p. 142-10.) None of the Supreme Court cases suggests that a forum state must apply its law. The Supreme Court authority has treated the determination of whether a forum state should apply its workers' compensation law or decline to hear the matter in deference to the laws of other states as an issue of constitutional law.

California law is consistent with United States Supreme Court authority. The Labor Code provides, "The Division of Workers' Compensation, including the administrative director, and the appeals board have jurisdiction over all controversies arising out of injuries suffered outside the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury and the contract of hire was made in this state." (§ 5305; see 9 Larson's Workers' Compensation Law, *supra*, § 143.04[2][b], p. 143-23).)

In *Travelers Ins. Co. v. Workmen's Comp. App. Bd.* (1967) 68 Cal.2d 7, disapproved on another ground in *LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637, a California resident was injured while working in Utah and sought to avail himself of California workers' compensation law, after having obtained benefits under Utah's workers' compensation law. The California Supreme Court held that his acceptance of a telephonic offer of employment while in California, resulted in the contract being made in this state. (*Id.* at pp. 14-15.) The court explained why this state had a legitimate interest in the worker's injury and its consequences by employing a governmental interest analysis. It said, "California has rejected the traditional mechanical

8

solutions to choice-of-law problems and adopted foreign law only when it is appropriate in light of the significant interests in the particular case. The significance of extra-state elements varies directly with the nature of the forum's interest in a given case. Thus, California maintains a stronger interest in applying its own law to an issue involving the right of an injured Californian to benefits under California's compulsory Workers' compensation act than to an issue involving torts or contracts in which the parties' rights and liabilities are not governed by a protective legislative scheme that imposes obligations on the basis of a statutorily defined status. [6] Its interest devolves both from the possibility of economic burden upon the state resulting from non-coverage of the workman during the period of incapacitation, as well as from the contingency that the family of the workman might require relief in the absence of compensation. The California statute, fashioned by the Legislature in its knowledge of the needs of its constituency, structures the appropriate measures to avoid these possibilities. Even if the employee may be able to obtain benefits under another state's compensation laws, California retains its interest in insuring the maximum application of this protection afforded by the California Legislature." (*Id.* at pp. 11-13, fns. omitted.)

California courts have long focused on the contacts of the employment relationship with California in determining which state's workers' compensation law applies. In *Alaska Packers Assn. v. Indus. Acc. Com.* (1934) 1 Cal.2d 250, the applicant, a nonresident alien, entered into a contract in San Francisco with the Alaska Packers Association to perform work in Alaska. The contract provided that Alaska's workers' compensation law would apply. (*Id.* at pp. 252-253.) The applicant was treated twice in Alaska for an injury suffered there during his employment, but filed no compensation claim in that territory. He did, however, file a workers' compensation claim in California upon his return. The court held that the creation of the employment relationship in

---

**6**    "The governmental interest approach to conflict of laws issues was adopted by the California Supreme Court in 1967 as the chosen method for resolving conflict of laws disputes in tort and contract cases." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 44, p. 113, citing *Reich v. Purcell* (1967) 67 Cal.2d 551, 555.)

9

California, which came about when he signed the contract in San Francisco, was a sufficient contact with California to warrant the application of California workers' compensation law. (*Id.* at pp. 257-258.)

In *Pacific E. I. Co. v. Industrial Acc. Com.* (1938) 10 Cal.2d 567, the applicant was an employee of a chemical company based in Massachusetts, where he worked and resided. (*Id.* at p. 569.) He was sent by his company to Oakland, California, to resolve a problem with a chemical compound, was injured there, and received medical treatment there. The California Supreme Court held that California's governmental policy called for covering the medical expenses of an injured worker and that this sufficed for the application of California law. (*Id.* at pp. 576-578.) The United States Supreme Court held in the same case that a state's workers' compensation law could be invoked if the injury occurred in that state. (*Pacific, supra,* 306 U.S. at p. 503.)

In *Matthews v. National Football League Management Council* (9th Cir. 2012) 688 F.3d 1107 (Matthews), the applicant Matthews was a professional football player from 1983 to 2002 for teams situated outside California. In 2008, he filed a workers' compensation claim in California. The National Football League Management Council claimed that he was barred from doing so by his employment contract that called for the application of Tennessee law. (*Id.* at p. 1110.) Although during his career, Matthews played 13 games in California, he was unable to show that he sustained any specific injury in California or that he ever received medical treatment in California for an injury. (*Id.* at p. 1113.) As in the case before us, Matthews contended that he sustained cumulative injuries that meant he was also injured in California, and thus the California Workers' Compensation Act applied rather than the arbitration provision of a collective bargaining agreement. (*Id.* at p. 1114.) The court said that it could not determine whether a California court would conclude that Matthews's contacts with California were sufficient for the application of California law (*ibid*.) and thus it was not sufficiently clear that Matthews was "within the category of injured employees to which California workers' compensation law extends" to overcome the deference accorded an arbitration

10

award.  (*Id.* at p. 1112; see *Atlanta Falcons Football Club LLC v. National Football League Players Ass'n (*N.D. Ga. 2012) 906 F.Supp.2d 1278, 1286-1287.)

Section 181 of the Restatement (Second) of the Conflict of Laws (section 181) specifically addresses when a state may award relief to a person under its workers' compensation law.  Section 181 provides that a state may do so if the injury occurred in that state; if the employment is principally located in the state; if the employer supervised the employee's activities from a place of business in the state; if the state is that of the most significant relationship to the contract of employment with respect of the issue of workers' compensation under the rules of sections 187, 188, and 196 of the Restatement (Second) of the Conflicts of Law;[7] if the parties have agreed in the contract of employment or otherwise that their rights should be determined under the workers' compensation act of the state; or if the state has some other reasonable relationship to the occurrence, the parties, and the employment.  (See also 9 Larson, *supra*, § 142.01, p. 142-2 [same formulation].)

Comment (a) to section 181 provides that the section is a rule "of constitutional law.  Under the due process clause of the Fourteenth Amendment, a State of the United States may apply its local law to affect legal interests if its relationship to a person, thing or occurrence is sufficient to make such application reasonable (see § 9)."  Section 9 of the Restatement (Second) of Conflicts of Law states that a state may not apply its local law unless such application would be reasonable in the light of the relationship of the state and of other states to the person, thing or occurrence involved.  Cases have cited with approval the sufficient relationship test set forth in section 181.  (See, e.g., *Knapp v. Hamm & Phillips Service. Co., Inc.* (S.D. 2012) 824 N.W.2d 785, 790; *Martin v. American Colloid Co.* (S.D. 2011) 804 N.W.2d 65, 69-70; see also *Baron v. Genlyte Thomas Group, LLC* (Conn. App. 2012) 34 A.3d 423.)

---

**7** These sections deal, respectively, with situations in which the parties have selected a particular state's law, in which they have not done so, and with contracts calling for the rendition of services.

11

### 2. Nonapplicability of Other States' Workers' Compensation Law In California

Despite a lack of California authority, it is widely accepted that "rights created by the compensation act of one state cannot ordinarily be enforced in another state or in a federal court." (9 Larson, *supra*, § 140.02[1], p. 140-3; see *Id.* at Digest, § 140.02D[1] n. 1, pp. D140-3 to D140-6 [citing cases from ten jurisdictions[8]]; see *Dial v. Hartford Accident & Indem. Co.* (5th Cir. 1989) 863 F.2d 15, 16.) Such a principle is justified because workers' compensation laws involve administrative machinery that will differ from state to state.

In some states there is an exception to this rule when the issue does not concern a particular administrative procedure and when the remedies available under the two state laws are the same; the forum state then may apply the law of another state. (See, e.g., *Floyd v. Vicksburg Cooperage Co.* (Miss. 1930) 126 So. 395, 398.) Some states expressly permit rights created by the compensation laws of other states to be enforced. (Ariz. Rev. Stat. Ann. § 23-904(B); Vt. Stat. Ann., Tit. 21, § 620; Hawaii Rev. Stats. § 386-6.) These exceptions are not widely applied. (9 Larson, *supra*, § 140.02[5], [6] & [7], pp. 140-8 to 140-10.) We choose to follow the more widely-applied rule and not the exception that permits the enforcement of rights conferred by workers' compensation laws of other states.

We are not, therefore, faced with an issue of which law to apply, but only with whether California's workers' compensation law applies in this case. That issue has been framed as one of due process under the 14th amendment of the United States Constitution. (See Rest.2d. Conflicts of Law, *supra,* § 181, p. 537.) If this state lacks a sufficient relationship with Johnson's injuries, to require the petitioner—the employer—to defend the case here would be a denial of due process such that the courts of this state do not have authority to act. This might be referred to as a lack of subject matter jurisdiction. (See *Carslon v. Eassa* (1997) 54 Cal.App.4th 684, 691 ["subject matter

---

[8] They are Alabama, Arkansas, Kentucky, Louisiana, Minnesota, Mississippi, Missouri, Nebraska, Tennessee, and Vermont.

12

jurisdiction 'relates to the inherent authority of the court involved to deal with the case or matter before it'"]; Herlick, California Workers' Compensation Handbook (32nd ed. 2013) § 13.1, p. 13-2 ["The term 'jurisdiction' refers to the authority of a governmental body to exercise control over persons or things. Its precise meaning must be gained from the context in which it is used. Disputes concerning jurisdiction in workers' compensation cases may involve . . . jurisdiction as limited by . . . subject matter"]; *Martin v. American Colloid Co, supra,* 804 N.W.2d at p. 67 [jurisdiction in regard to administrative agencies is the power given by law to hear and decide controversies].)

In addition, in *Alaska Packers, supra,* 294 U.S. at pages 547 to 548, the Court suggested that the interest of the forum state is to be weighed against that of another state "in determining the full faith and credit issue." (9 Larson, *supra,* § 142.03[5], p. 142-9.) As case law evolved, the only test is whether the forum state has a legitimate interest. (*Ibid.*) If it does, that state will grant relief. If it does not, it will deny relief. Thus, if the forum state lacks a sufficient connection to the matter, it will, in effect, give full faith and credit to workers' compensation law of another state that has such sufficient connection to the matter. Cases have often suggested this principle by providing that a state with sufficient connections with a workers' compensation matter can apply its workers' compensation law without offending the full faith and credit law. (See *Atlanta Falcons Football Club LLC v. National Football League Players Ass'n, supra,* 906 F.Supp.2d at p. 1287 [full faith and credit clause not offended "*unless* California can extend its workers' compensation benefits without restraint"].) "[A] state may apply its own law whenever it has a valid interest in litigation and such an application does not reflect 'hostility to the public Acts' of another state, (*Carroll v. Lanza,* [*supra,*] 349 U.S. at [p.] 413, or 'create a substantial threat to our constitutional system of cooperative federalism,' *Nevada v. Hall* [1979] 440 U.S. 410, 424, n. 24." (*Dissell v. Trans World Airlines* (Me. 1986) 511 A.2d 441, 445; see *Director, Office of Workers' Compensation Programs, etc. v. National Van Lines* (U.S. App. D.C. 1979) 613 F.2d 972, 979 ["The reach of the statute has been limited in accordance with the dictates of the full faith and credit clause . . . to cases where there is 'some substantial connection between the District and the particular

13

employee-employer relationship . . .”]; *Dailey v. Dallas Carriers Corp.* (1996) 43 Cal.App.4th 720, 726 [forum state's choice to apply its own law does not violate the full faith and credit clause if the state has significant contacts with the dispute even if another state with significant contacts purports to provide an exclusive remedy].)[9]

### 3. California's Workers' Compensation Law Does Not Apply

Johnson contends that because her injuries were cumulative, the single game that she played in Los Angeles contributed to her injuries and ensuing disability, i.e., Johnson seeks to invoke the first ground set forth in section 181 of the Restatement of Conflicts of Law Second, *supra,* which is that the injuries occurred in California. We do not agree.

Section 3208.1, subdivision (b) defines cumulative trauma as “occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment. The date of a cumulative injury shall be the date determined under Section 5412.” Section 5412 provides that the “date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom, and either knew, or in the exercise of due diligence should have known, that such disability was caused by his [or her] present or prior employment.”

 “A number of cases have held that where disability results from continuous cumulative traumas or exposures, the injury occurs not at the time of each distinct, fragmented exposure or trauma, but at the time the cumulative effect of the injuries has ripened into disability.” (*Fruehauf v. Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569, 576.) This is consistent with section 5412. Johnson continued to play the 2003 season after she played in Los Angeles. Thus, the facts suggest that the date of her disability is August 7, 2003, the date of her retirement. Importantly, her disability did not arise on July 20, 2003, when she played one game in Los Angeles.

---

**9** See generally Tompkins, *From the Gridiron to the Golden State: NFL Players' Fight for Workers' Compensation Rights in California* (2013) 23 Marq. L.Rev. 479.

The effects of participating in one of 34 games do not amount to a cumulative injury warranting the invocation of California law. As the cases show, a state must have a *legitimate* interest in the injury. A single basketball game played by a professional player does not create a legitimate interest in injuries that cannot be traced factually to one game.[10] The effect of the California game on the injury is at best de minimis.[11]

The situs of the employment relationship is often the most realistic basis for the invocation of a state's workers' compensation law. (9 Larson, *supra*, § 143.04[1], p. 143-23.) The making of an employment contract within the state is usually deemed to create an employment relationship within that state. (*Id.* at § 143.04[2][b], p. 143-23.) The situs of the Johnson employment relationship is Connecticut or New Jersey, not California. Here, Johnson received a Connecticut workers' compensation award, at least in part, for her injury as suggested by the Board in this case when the Board called for an apportionment of the award. The places of Johnson's injuries, employment relationship, employment contract, and residence, all possible connections for the application of a state's workers' compensation law, do not have any relationship to California.

Accordingly, California does not have a sufficient relationship with Johnson's injuries to make the application of California's workers' compensation law reasonable. And California law has no obligation to apply the workers' compensation law of any other state. Thus, as a matter of due process, California does not have the power to entertain Johnson's claim.

---

[10] Under a recent amendment to section 3600.5, California law does not apply to those professional athletes who spend less than 20 percent of their working days as a professional athlete in California. (Stats. 2013, ch. 653, § 1.) This amendment does not apply retroactively.

[11] Johnson has only cited opinions of the Board. (See, e.g., *Houston Comets v. W.C.A.B.* (*Kenlaw, Jessee*) (2013) 78 Cal.Comp.Cases 1153.) Such opinions are citable (*Bowen v. Workers' Comp. Appeals Bd.* (1999) 73 Cal.App.4th 15, 23 fn. 12), but are not binding on this court. (*Thrifty Drug Stores, Inc. v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 937, 941, fn. 3.)

## DISPOSITION

The decision of the Workers' Compensation Appeals Board is annulled, and the case is remanded to the Workers' Compensation Appeals Board with directions to dismiss Johnson's application for compensation.

**CERTIFIED FOR PUBLICATION**

MOSK, Acting P. J.

We concur:

KRIEGLER, J.

KUMAR, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16