Filed 6/28/18; certified for publication 7/24/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LARRY C. TRIPPLETT,<br><br>  Petitioner,<br><br>  v.<br><br>WORKERS' COMPENSATION APPEALS BOARD, INDIANAPOLIS COLTS et al.,<br><br>  Respondents. | G054825<br><br>(WCAB No. ADJ6943108)<br><br>O P I N I O N |

Original proceeding to review a decision of the Workers' Compensation Appeals Board. Affirmed.

Leviton, Diaz & Ginocchio and Christopher C. Ginocchio, for Petitioner.

Pearlman, Borska & Wax and Melissa E. Amitrano, for Respondent Great Divide Insurance Co.

John Shields for Respondent Workers' Compensation Appeals Board.

Larry C. Tripplett, a former professional football player, petitioned for review of the Workers' Compensation Appeals Board's (WCAB) decision to deny his claim for worker's compensation for cumulative injuries he suffered during his career. We issued a writ of review, and now affirm the WCAB's decision.

Tripplett's primary contention is that the WCAB erred because he satisfied his evidentiary burden of proving he was hired by the Indianapolis Colts in California for purposes of Labor Code sections 3600.5, subdivision (a), (3600.5(a)) and 5305[1], and thus was eligible for workers compensation under California law.

Although the workers compensation judge (WCJ) found jurisdiction was established by the fact Tripplett's agent had "negotiated" his contract with Indianapolis while located in California, the WCAB reversed. It suggested instead that the salient question in assessing whether Tripplett was "hired" in California was whether he or his agent executed the written employment agreement in this state.

We agree with the WCAB that Tripplett was hired when he executed the written employment agreement offered by Indianapolis. Because the evidence supported the WCAB's conclusion that both Tripplett and his agent were outside of California when they signed the agreement, Tripplett failed to satisfy his burden of proving he was hired in California.

Tripplett also claims, in conclusory fashion, that the WCAB erred by concluding there was no other basis for establishing subject matter jurisdiction over his cumulative injury claim. He asserts that his residency in the state, combined with his participation in two games in California during his career, demonstrated he had a greater than de minimus contact with the State of California. But Tripplett's residency in California provides no basis for establishing subject matter jurisdiction over his injury, and we find no error in the WCAB's conclusion that his participation in two games in

---

[1] All further statutory references are to the Labor Code.

2

California, out of more than 100 in his career, reflected no significant connection between this state and his cumulative injury.

## I

## FACTS

Larry Tripplett was a professional football player who played defensive tackle for the Indianapolis Colts from 2002 to 2006, then played for the Buffalo Bills from 2006 to 2008, and played briefly for the Seattle Seahawks in 2008.  In his six-year career, Triplett played approximately 110 games of professional football, but only played two games in California.

In September 2009, Tripplett filed a claim for workers' compensation benefits, alleging injury to multiple body parts throughout the course of his National Football League (NFL) career.  Each of the defendant football teams and insurers denied his claim.

According to the WCAB's opinion, both Buffalo and Seattle disputed California jurisdiction, and thus in January 2012, a trial was conducted at which "[t]he parties stipulated at that time that [petitioner] 'sustained injury arising out of and in the course of his employment, but as this trial is on jurisdiction issues only, no body parts are listed.'  The issue . . . was stated in the minutes [of the hearing] as, 'solely California jurisdiction regarding Buffalo Bills and Seattle Seahawks.'"

At that trial, Tripplett testified about his hiring by Indianapolis, explaining that his agent David Dunn, who was located in Newport Beach, negotiated all of his contracts.  Tripplett asserted he was living in Los Angeles when he signed his Indianapolis contract in his agent's Newport Beach office.  At the end of Tripplett's cross-examination, he moved to "'elect against the Indianapolis Colts.  Since jurisdiction was not contested by the Colts even prior to this trial, over the objection of the Indianapolis Colts, the Court allowed the election.'"

Tripplett's employment agreement with Indianapolis is in writing, and signed by Tripplett, by Robert Terpening on behalf of the team, and by Tripplett's agent, all on July 26, 2002. Although the agreement is formatted so that all three signature lines are on a single page, only Tripplett and Terpening signed on the same page. Tripplett's agent signed a different copy of the page, which was then faxed from a telephone number in Buffalo, New York.

On September 14, 2015, the matter proceeded to a further trial against Indianapolis. At that further trial, Tripplett again testified he was a California resident when Indianapolis hired him, and to the best of his knowledge he had signed his Indianapolis employment agreement at his agent's office in California. However, after Tripplett was provided with a copy of that agreement, showing he and his agent, Joby Branion,[2] had signed separate copies of the signature page, he acknowledged "I honestly don't remember" where he signed the agreement.

Tripplett also testified that although he "put a lot of trust in [his] agent" to negotiate his employment agreements, and "whatever he advised me to do, that's what I signed," it was Tripplett himself who "had the final say."

Indianapolis' witness, Terpening, testified he signed Tripplett's employment contract in his capacity as the team's executive vice-president. He explained he had negotiated the terms of the agreement over the phone with Tripplett's agent, Branion, whose principal place of business was in California.

Terpening testified Tripplett likely signed the contract in Indianapolis while attending the team's minicamp on July 24 through July 26, 2002, and Branion had transmitted his signature via facsimile from New York.

Terpening also explained Tripplett was not eligible to play for Indianapolis until he signed his agreement: "The NFL constitutes [sic] that anybody that is an

_____

[2] Branion is apparently an associate of Dunn, the man Tripplett initially identified as his agent.

4

unsigned player on your reserve list cannot report, play or be in training camp until they sign the NFL Player Contract."[3] That testimony was consistent with the contract itself, which specified it "will begin on the date of execution, or March 1, 2002, whichever is later."

At the conclusion of the trial, the WCJ found that Tripplett had sustained cumulative injury to multiple body parts while employed by the three football teams, causing 67 percent permanent disability and need for future medical treatment.

The WCJ also found that the WCAB had jurisdiction over the claim for benefits, explaining that although Tripplett had not signed the agreement in Indianapolis, his agent "negotiated the contract in California. There were no changes to the contract per the testimony of the defense witness. The signing of the contract was a condition subsequent to the acceptance by the agent assumed to be in California."

Indianapolis filed a petition for reconsideration with the WCAB, arguing the WCJ erred in finding jurisdiction because there was no substantial evidence to support its determination that Tripplett's contract for hire was made in California.

The WCAB panel granted the petition for reconsideration and reversed the WCJ's finding of jurisdiction based on Tripplett's hiring in California. The panel noted the evidence demonstrated "that neither [Tripplett] nor his agent were in California when the employment was accepted and the contract was signed." And "[w]hile it [is] not necessary that all the terms of an employment agreement be finalized within California in order for the WCAB to obtain jurisdiction pursuant to sections 3600.5(a) and 5305, there must nevertheless be-evidence sufficient to support a finding that a hiring occurred in California by the acceptance of employment within this state in order for that jurisdictional basis to apply."

---

[3] Terpening explained a separate agreement, allowed Tripplett to participate in the team's minicamp was pursuant to a separate agreement which he characterized as more of an "insurance form."

5

The WCAB panel also concluded there was no other basis for WCAB jurisdiction over Tripplett's claim, and noted "the limited number of professional games played by [Tripplett] in this state would support a timely objection to adjudication of the claim in California."

II

DISCUSSION

1. *Standard of Review*

"The Appeals Board's findings of fact, even ultimate facts, are conclusive and not subject to review [citation] if supported by substantial evidence [Citations.] We may not hold a trial de novo, take evidence or exercise independent judgment. [Citation.] The Appeals Board's interpretation of the Workers' Compensation Act is reviewed de novo, but such interpretation by the Appeals Board is entitled to deference." (*New York Knickerbockers v. Workers' Comp. Appeals Bd.* (2015) 240 Cal.App.4th 1229, 1237-1238 *(Macklin)*.)

2. *Waiver of Jurisdictional Objection*

Before addressing the merits of Tripplett's contention that the WCAB erred in concluding it lacked jurisdiction over his claim, we consider his assertion that Indianapolis waived the contention by not raising a timely objection.

The jurisdiction at issue is the WCAB's subject matter jurisdiction over Tripplett's injury.[4] The WCAB is solely a creation of the Legislature, and thus its fundamental subject matter jurisdiction is limited by statute. Article XVI, section 4, of the California Constitution provides that the Legislature "is . . . expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a

---

[4] To the extent Tripplett is suggesting Indianapolis waived any objection to the assertion of personal jurisdiction over it in connection with Tripplett's injury, we need not address the claim. In the absence of subject matter jurisdiction, the tribunal's ability to exercise jurisdiction over the parties is moot.

6

complete system of workers' compensation, by appropriate legislation." (Cal. Const., art. XIV, § 4.) Thus, in the absence of a statute affirmatively conferring subject matter jurisdiction over a claim to the WCAB, it lacks the power to adjudicate that claim. In this case, Tripplett relied on sections 3600.5(a), and 5305 to establish WCAB jurisdiction over his claim on the basis that he was hired in California.

The existence of subject matter jurisdiction "may not be waived by a party or conferred on the court by consent," (*Sampsell v. Superior Court* (1948) 32 Cal.2d 763, 773, and thus the contention that any tribunal, including the WCAB, lacks subject matter jurisdiction can be raised at any time. (*Long Beach Unified Sch. Dist. v. State of California* (1990) 225 Cal.App.3d 155, 177.) We therefore turn to the merits of the jurisdictional issue.

*3. Whether Tripplett was Hired in California*

In arguing the WCAB has jurisdiction over his claim, Tripplett relies on section 3600.5(a), which specifies that "[i]f an employee who has been hired or is regularly [employed] in the state receives personal injury . . . arising out of . . . [such] employment outside of this state, he . . . shall be entitled to compensation according to the law of this state," and 5305, which specifies the WCAB has "jurisdiction over all controversies arising out of injuries suffered outside the territorial limits of the state in those cases where . . . the contract of hire was made in this state."

Tripplett's claim is that the WCJ correctly determined he had been hired in California when his agent completed the negotiation of his contract terms, which presumptively occurred in California, the agent's principal place of business. Under this theory, the actual signing of the agreement was, as the WCJ termed it, "a condition subsequent to the acceptance [of the contract] by the agent assumed to be in California." We reject the claim because Tripplett's employment agreement was in writing and specified that it became effective only after execution. Moreover, there was no evidence

7

any party believed that a binding agreement had been formed prior to execution of the written document.

In support of his contention he was nonetheless "hired" when his agent completed the negotiation of his employment agreement, Tripplett argues that for purposes of workers compensation law, there is no requirement "that the parties sign or otherwise conclude all the terms of a binding written employment contract within California." He relies on *Laeng v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771 (*Laeng*) and *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055 (*Arriaga*), for the proposition that "an 'employment' relationship sufficient to bring the [workers' compensation statutes] into play cannot be determined simply from technical contractual or common law conceptions of employment but must instead be resolved by reference to the history and fundamental purposes underlying the [workers' compensation statutes]." (*Laeng, supra*, 6 Cal.3d at p. 777.)

However, neither *Laeng* nor *Arriaga* addressed the purposes or policies underlying sections 3600.5(a) or 5305, explained how courts should construe the meaning of the word "hired" as used in those statutes. Instead, both cases were focused on a broader issue, i.e., establishing the scope of an "employment" relationship under workers' compensation law, for the purpose of assessing whether an injured worker could be eligible for compensation even though the worker had not entered into any contract with the employer for which he was performing services.

In *Laeng*, the worker was injured during a "'tryout' competition" for a job as a city refuse worker. (*Laeng, supra*, 6 Cal.3d at p. 774) The Supreme Court reasoned that "[a]lthough . . . at the time of his injury the claimant was not yet 'employed' by the city in any contractual sense, we are not confined, in determining whether Laeng may be considered an 'employee' for purposes of workmen's compensation law, to finding whether or not the city and Laeng had entered into a traditional contract of hire. On the contrary, Labor Code section 3351 provides broadly that for the purpose of the

Workmen's Compensation Act '"Employee" means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written.'" (*Id.* at pp. 776-777.) In light of that broad statutory definition of employee, as well as the fact the tryout had exposed the worker to the same "special risks" of employment the workers' compensation law was designed to protect against *(id.* at p. 782) the Court concluded the resulting injury arose out of an "'employment' relationship sufficient to bring the act into play." (*Id.* at p. 777.)

In *Arriaga*, the worker was injured while performing community service for the Department of Transportation as part of her sentence for a criminal infraction. Applying *Laeng*, The Supreme Court again concluded that although the worker had no direct employment contract with the department at the time of her injury, she nonetheless qualified as its "employee" for purposes of the workers compensation law.

While *Laeng* and *Arriaga* explain in some detail why the specific definition of "employee" contained within the workers compensation law, combined with the policies underlying that law, support a broader interpretation of the "employment" relationship than exists in the general common law, their rationale does not automatically support a similar departure from contract law in determining whether an employee was "hired" in California or was hired elsewhere.[5]

---

[5] Of course, we acknowledge that section 3202 requires the entire workers' compensation law "be liberally construed by the courts with the purpose of extending [its] benefits for the protection of persons injured in the course of their employment." And to the extent *Laeng* and *Arriaga* merely affirm that principle, they apply in this context as much as any other.

The general rule, however, does not obligate us to ignore either the law otherwise applicable to an issue or the actual words used by the Legislature, or to construe them in an unreasonable fashion so as to establish jurisdiction where none was intended. (See *Department of Corrections v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 197, 206 ["[i]f a provision in [the Act] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable construction is possible"].)

In fact, when courts have grappled with the issue of determining the location at which an injured employee was hired for purposes of workers compensation law, they have done so by applying traditional principles of contract formation. For example, *The Travelers Insurance Company v. Workmen's Compensation Appeals Board* (1967) 68 Cal.2d. 7, involved "the formation of [an] oral contract of employment" (*id.* at p. 13), and the issue was whether the contract was formed in California when the employee accepted an offer conveyed by the employer's agent over the telephone. The Supreme Court applied California law in concluding it was, noting "California has adopted the rule that an oral contract consummated over the telephone is deemed made where the offeree utters the words of acceptance." (*Id.* at p. 14.)

*Reynolds Elec. etc. Co. v. Workmen's Comp. App. Bd.* (1966), 65 Cal.2d 429 (*Egan*), also involved an oral employment agreement.[6] The employee accepted an offer of Nevada employment, conveyed by a representative of his union, while physically located at a union hiring hall in California. The Supreme Court explained that the case was "governed by the same rules applicable to other types of contracts, including the requirements of offer and acceptance" (*id.* at p. 433), and concluded the contract had been formed in California because "the union was the agent of [the employer] for the purpose of transmitting offers of employment to its members and [the employee]

_____

[6] Although the employee was required to fill out paperwork when he arrived at the jobsite, including an application for a government security clearance, the court concluded the completion of the paperwork was a condition subsequent that did not prevent the formation of an oral agreement between the parties. "[T]he performance of incidental administrative matters after the employee arrived at the job, including filling out employment forms, was consistent with the performance of a contract already in existence. Here, as we have seen, the commission found that Egan had not received security clearance before actually commencing work. Under these circumstances, there was ample justification for the determination that obtaining such clearance was a condition subsequent to employment." (*Egan, supra*, 65 Cal.2d at pp. 434-435.)

10

accepted [the employer's] offer when he received his dispatch referral slip and departed for the jobsite."  (*Id*. at p. 434.)

In *Bowen v. Workers' Comp. Appeals Bd.* (1999) 73 Cal.App.4th 15, the court relied on traditional principles of offer and acceptance to conclude when a team sent a written contract to a player, it was making him an offer of employment which, when signed by the player in California and mailed it back, had been accepted in the state.  The court concluded the team's own execution of the agreement, after receiving it back from the player, operated as a condition subsequent to the contract formation because the team could not be "'both the offeror, in seeking out the employee and submitting a proposed agreement, and an offeree, in accepting the contract after reserving the right or privilege of making the final act of execution'"  (*Id*. at p. 22.)  Thus, the court held the player's employment contract had been formed for purposes of workers compensation law when he accepted the proposed contract in California.

This case, of course, is distinguishable from *Bowen* because Indianapolis never sent Tripplett's proposed employment agreement to him in California, and he did not sign it here.  Indeed, no party signed the agreement in California.  Rather, Tripplett claims it is the mere fact his agent negotiated the contract terms in California establishes he was "hired" in this state.   It is not enough.

In *Jenkins v. Arizona Cardinals,* 2012 Cal.Wrk. Comp. P.D. LEXIS 189 (*Jenkins*),[7] the WCAB panel rejected a similar claim of hiring based on the agent's negotiation *and signing* of an employment agreement within the state.  The panel explained that no contract could have been formed by the agent in California unless the agent was authorized to bind his client:  "Given that Jenkins had the ability to *entirely*

_____

[7]     "[A Workers' Compensation Appeals] Board panel decision reported in the California Workers' Compensation Reporter [] is a properly citable authority, especially as an indication of contemporaneous interpretation and application of workers' compensation laws." (*Griffith v. Workers' Comp. Appeals Bd*. (1989) 209 Cal.App.3d 1260, 1264, fn. 2.)

*reject* the contract after it was negotiated, we conclude that his signature on the contract was *not* a mere condition subsequent that did not prevent the formation of a contract. Every contract requires the actual consent of both parties. (See Civ. Code, §§ 1550, 1565.)" (*Id.* at p. 8; see also *Barrow v. Workers' Comp. Appeals Bd.* (2012) 77 Cal.Comp.Cases 988, 990 [there must be "evidence to show that the contract was actually accepted, and thus became binding, within California's borders"].) [8]

Here, much like the player in *Jenkins*, Tripplett retained the ability to reject any contract his agent negotiated. Although Tripplett did testify that he had such trust in his agent that "whatever he advised me to do, that's what I signed," he did not claim he had no right to refuse an agreement his agent negotiated. To the contrary, Tripplett acknowledged it was he who "had the final say." Thus, Tripplett's agent's negotiation of terms to be included in a written employment contract was not sufficient to bind Tripplett to anything. And because those negotiations were the only contract-related activity that took place in California, there is no basis to conclude the contract was formed in this state.

Tripplett relies on *Paula Insurance Co. v. Workers' Comp. Appeals Bd.* (2000) 65 Cal.Comp.Cases 426 (*Paula*). In *Paula*, the WCAB panel concluded the worker had been hired in California when the worker's father accepted on the employer's behalf the employer's offer of employment over the telephone while in California. But *Paula* is distinguishable because the agreement in that case was an oral rather than written. While a binding oral agreement could be formed over the telephone, Tripplett's written agreement with Indianapolis – which specified it was effective only when executed – could not.

---

[8] "Writ denied" cases are citable authority as to the holding of the WCAB in its underlying decision, but they are not binding precedent and have no stare decisis effect. (*Farmers Ins. Group of Companies v. Workers' Comp. Appeals Bd.* (2002) 104 Cal.App.4th 684, 689, fn. 4.)

Moreover, the outcome here remains the same even if we assume that Tripplett's agent had some authority to bind him to an oral employment agreement at the conclusion of the agent's negotiation with Indianpolis. Tripplett's written employment agreement includes an integration clause that specifies it supersedes any prior oral agreement entered into between the parties. Thus, the written agreement Tripplett signed while attending the team's minicamp in Indianapolis was the only agreement governing his employment relationship with the team.

Because there is no evidence that a binding employment agreement was formed between Tripplett and Indianapolis in California, we find the WCAB did not err in concluding California did not have jurisdiction over his work-related injury.

*4. Jurisdiction based on games played in California*

Tripplett also contends that even if he was not "hired" in California, the WCAB nonetheless had jurisdiction over his injury because he played two games in California during his career, which contributed to his cumulative injury. We disagree.

In *Federal Ins. Co. v. Workers' Comp. Appeals Bd.* (2013) 221 Cal.App.4th 1116, 1130 (*Johnson*), the court explained a cumulative injury "occurs" when the injury "has ripened into a disability." Thus, although the athlete in that case contended "that because her injuries were cumulative, the single game that she played in Los Angeles contributed to her injuries and ensuing disability" the court rejected her contention. The court explained that "'[t]he date of a cumulative injury shall be the date determined under Section 5412,'" and that statute, in turn, provides that the "'date of injury . . . is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his [or her] present or prior employment.'" (*Johnson, supra*, 221 Cal.App.4th at p. 1129.)

Consistent with those statutes, the *Johnson* court noted that "'[a] number of cases have held that where disability results from continuous cumulative traumas or exposures, the injury occurs not at the time of each distinct, fragmented exposure or

13

trauma, but at the time the cumulative effect of the injuries has ripened into disability.'" Thus, because the athlete in *Johnson* "continued to play the 2003 season after she played in Los Angeles . . . , the facts suggest that *the date of her disability is August 7, 2003, the date of her retirement.* Importantly, her disability did not arise on July 20, 2003, when she played one game in Los Angeles." (*Johnson, supra*, 221 Cal.App.4th at p. 1130, italics added.)

Applying *Johnson's* analysis suggests Tripplett's cumulative injury likewise occurred at his retirement, rather than during any particular game – including either of the two games he played in California. Thus, his cumulative injury had not "ripened into disability" when he played two games in California.

But even if *Johnson* did not directly undercut Tripplett's suggestion his injury occurred here, we would have to reject his assertion that the WCAB erred in finding no jurisdiction. Because we are bound by the WCAB's findings, if supported by substantial evidence, the burden was on Tripplett to demonstrate why that evidence *could not* support a finding that the WCAB lacked jurisdiction. He has not done so.

In support of his argument, Tripplett cites no workers' compensation cases other than *Johnson*, which rejects the athlete's jurisdictional claim. And he makes no effort to meaningfully distinguish his situation from the facts of that case, other than by pointing out he resides in California. But, as Tripplett concedes in another part of his petition, WCAB jurisdiction cannot be conferred or withheld on the basis of residency within the state. (*Quong Ham Wah Co. v. Industrial Acc. Com.* (1920) 184 Cal. 26; *Benguet Consol. Mining Co. v. Industrial Acci. Com.*, 36 Cal. App. 2d 158, 164.) We consequently find no error.

14

III

DISPOSITION

The decision of the WCAB is affirmed.  Each party to bear their own costs.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LARRY C. TRIPPLETT, | |
| Petitioner, | G054825 |
| v. | (WCAB No. ADJ6943108) |
| WORKERS' COMPENSATION APPEALS BOARD, INDIANAPOLIS COLTS et al., | O R D E R |
| Respondents. | |

Respondent Great Divide Insurance Company c/o Berkley Specialty on behalf of the Indianapolis Colts; and multiple nonparties, Akin Gump Strauss Hauer & Feld on behalf of the National Football League; Bober, Peterson & Koby on behalf of various Major League Baseball clubs, National Football League teams, insurance companies and their third party administrators; Colantoni, Collins, Marren, Phillips & Tulk, on behalf of 32 National Football League franchises, all Major League Baseball, National Hockey League, National Basketball Association franchises, Major League Soccer; Seyfarth Shaw on behalf of World Wrestling Entertainment, Inc.; William J. Heller on behalf of the New York Football Giants, Inc.; and Law Offices of Muhar,

Garber, AV and Duncan for Liberty Mutual Insurance Company have requested that our opinion, filed on June 28, 2018, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.